**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**TAMIKA BADILLO, et al.,**

    **Plaintiffs,**

v.                                                                                                              **Case No. 8:04-cv-591-T-30TBM**

**PLAYBOY ENTERTAINMENT GROUP,**
**INC., et al.,**

    **Defendants.**
_____/

**ORDER**

THIS CAUSE comes before the Court upon Defendant Anheuser-Busch, Inc.'s (hereinafter "Defendant") Motion for Summary Judgment on All Claims (Dkt. 320), and Plaintiffs' Statement of Facts (Dkt. 349) and Memorandum of Law in Opposition to the same (Dkt. 349). For the reasons stated below, this Court finds that Defendant's Motion is **GRANTED**:

**FACTUAL BACKGROUND**

Defendant is a brewer of alcoholic and non-alcoholic malt beverages, and distributes its products nationwide through a network of independent wholesalers. In Florida, as in many other parts of the country, Defendant distributes its beer utilizing a three-tier distribution system: Defendant sells its products to an authorized wholesaler[1] who then sells the products to licensed retail accounts. Occasionally, Defendant creates promotional

---

[1]Daytona Beverages is one such wholesaler in the state of Florida. The relationship between Daytona Beverages and Defendant is governed by a Wholesaler Equity Agreement. (Dkt. 321, Ex. G).

materials to market their products.[2] For example, for Spring Break 2001, Defendant developed banners and merchandise to be distributed during spring break. These items included t-shirts, bikinis, lip balm, and stick-on tattoos and were made available to all wholesalers, including Daytona Beverages.[3] Additionally, two employees of Defendant were present in Daytona Beach, Florida, to assist local wholesalers during spring break with marketing activities, such as hanging banners and distributing the promotional materials Daytona Beverages had obtained for spring break.

Plaintiffs, in the early part of March 2001, traveled to Daytona Beach to enjoy their spring break from high school. At the time of their trip, Plaintiffs were seventeen years of age (nearly eighteen).[4] At some time during their stay in Daytona Beach, Plaintiffs decided to participate in a wet t-shirt contest. The contest was held on the outdoor pool deck of the Desert Inn Resort. Prior to participating in the wet t-shirt contest, Plaintiffs consumed beer behind the stage where the contest was to be performed. Additionally, Plaintiffs affixed temporary tattoos containing the "Bud Light" insignia to their arms, back and breasts. Once on stage, Plaintiffs danced provocatively, exposing their breasts. Plaintiff Campos, in

---

[2] These promotional materials are available for wholesalers to purchase and use in their respective markets, if they so desire.

[3] Daytona Beverages obtained some of these promotional materials, and, according to Defendant, developed their own marketing plan and distributed the merchandise at their respective retail accounts.

[4] While seventeen at the time of their trip, both Plaintiffs were on the eve of their eighteenth birthday. Plaintiff Campos' birth date is March 22, 1983, while Plaintiff Badillo's date of birth is May 24, 1983.

addition to exposing her breasts, also exposed her genital area.[5] At no time during the contest did either Plaintiff attempt to withdraw.[6]

The contest was photographed and video recorded by employees or agents of co-Defendants BV & BK Productions, Watchcams and Paul Prewitt.[7] Subsequent to the contests, co-Defendant Prewitt sold his footage to co-Defendants Lincolnwood Motion Pictures and New City Releasing. The footage was subsequently incorporated into commercial video products that were sold at various retail stores and broadcast over cable networks.

## **DISCUSSION**

### **I.   SUMMARY JUDGMENT STANDARD**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be

---

[5]The Court notes that Plaintiff Campos continually exposed her genital area to the crowd, taking the bottom of her bikini down even after specifically being told by one of the individuals who appears on the video to be running the contest to keep her clothing on.

[6]In reviewing the video footage of the contest, it does not appear that either Plaintiff expressed any desire to disassociate herself from the activities exhibited during the contest. In fact, when encouraged by the crowd, Plaintiffs, particularly Plaintiff Campos, danced more provocatively.

[7] BV & BK Productions, LLLP and Watchcams. Inc. were terminated as parties to this action on May 20, 2005. A Clerk's Default was entered against Defendant Prewitt on September 22, 2004.

no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

**II.   LEGAL ANALYSIS**

Plaintiffs allege in their Complaint that Defendant, individually and in concert with other Defendants,[8] violated 18 U.S.C. §§ 2251(a), 2252(a)(1)-(2), 2252A(a)(1), 2252A(a)(2)(A), 2252A(a)(3) (Counts I - VI), and Florida Statute §540.08 (Count VII).[9] Plaintiffs also allege Defendant, individually and in concert with other Defendants, violated and/or engaged in the following acts:  invasion of privacy - misappropriation of likeness (Count VIII), invasion of privacy - false light (Count IX)[10], negligent infliction of emotional distress (Count X), fraud in the inducement (Count XII), negligent supervision (Count XIII), premises liability (Count XIV), and Florida Deceptive and Unfair Trade Practices Act (Count XV)(Dkt. 1).

   **A.   Child Pornography Counts.**

       *1. Count I - Sexual exploitation of children.*

18 U.S.C. § 2251(a) makes it illegal for any person to "employ, use, persuade, induce, entice, or coerce" any minor to engage in sexually explicit conduct "for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251 (a).   In order to sustain a claim under this section, Plaintiffs had to produce evidence that Defendant induced them to

---

[8] In Count XVII of their Complaint, Plaintiffs allege that Defendant conspired with the other named Defendants in committing those acts alleged in Counts I to X and Counts XII to XV (Dkt. 1).

[9] For ease of reference, Counts I to VI will be referred to herein as the Child Pornography Counts.

[10] Counts VIII and IX will be referred to as the Invasion of Privacy Counts.

engage in sexually explicit conduct *for the purpose* of producing a visual depiction of the same. Plaintiffs have failed to do so.

First, Plaintiffs have produced no evidence establishing that Defendant induced[11] them to enter into the wet t-shirt contest. What Plaintiffs have submitted to this Court are conclusory allegations guised as evidence. For example, Plaintiffs in their Memorandum of Law, state "[t]he facts establish that ABI induced the Plaintiffs (i) to enter the contest and engage in sexually explicit conduct" (Dkt. 349 at 17), but provide no evidence either through documentation or affidavits which support this statement. What is present in the record is Plaintiffs's deposition testimony that they entered the wet t-shirt contest because of the one hundred dollar prize (Dkt. 321, Ex 7 at 14 - Badillo's deposition; Dkt. 321, Ex. 12 at 9 - Campos' deposition). Notwithstanding, Plaintiffs have presented no evidence that Defendant was responsible for offering the cash prize. In fact, on page 30 of their Response Motion, Plaintiffs identify Desert Inn as the entity which offered the cash prize.[12]

Further, there is no showing that Defendant had any responsibility for the video recording of the contest. That is, Defendant has not been shown to have induced anyone to do anything "for the purpose of producing a visual depiction."

---

[11] Induce is defined as "to lead or move by persuasion or influence; to bring about." Webster's II New College Dictionary 565 (1999).

[12] Plaintiffs have also, in a rather convoluted manner, alleged that the free beer that was being distributed back stage enticed Plaintiffs to go on stage and participate in the wet t-shirt contest. This contention is unavailing. Plaintiffs have presented no evidence that any employee of Defendant distributed beer to Plaintiffs or that an employee of Defendant was even present at the time of the wet t-shirt contest.

Plaintiffs have no competent evidence to support Count I of their Complaint and have failed to present an issue of material fact to preclude summary judgment on the same.

*2. Counts II to VI - 18 U.S.C. §§ 2252 , 2252A.*

In Counts II to VI of the Complaint, Plaintiffs allege Defendants violated 18 U.S.C. § 2252(a)(1) and (2), and § 2252A (a)(3).[13] In order to prevail on these claims, Plaintiffs had to establish that Defendants transported, received, distributed and reproduced for distribution video recordings knowing, at the time of the transport, receipt distribution or reproduction, that said video recordings contained sexually explicit images of minors.[14] Plaintiffs have presented no evidence that Defendant transported, received, distributed or reproduced the video recordings at issue in this case. In fact, Plaintiffs have no evidence that Defendant had any involvement at all with the video recordings.[15] Having failed to produce any evidence to support their claims, summary judgment on Counts II to VI is appropriate.

---

[13] Section 2252(a)(1)-(2) makes it illegal for any person to knowingly transport or receive any visual depiction involving the use of a minor engaged in sexually explicit conduct. See 18 U.S.C. § 2252(a)(1)-(2). Section 2252A(a)(3) makes it illegal for any person to knowingly reproduce any child pornography for distribution. See 18 U.S.C. § 2252A(a)(3).

[14] The scienter requirement applies to both the transport, receipt, production, or distribution of the sexually explicit material and the age of the performers. See United States v. X-Citement Video, Inc.,et al, 513 U.S. 64, 78 (1994). Plaintiffs have presented no evidence that Defendant knew Plaintiffs' ages at any time prior to the filing of this lawsuit.

[15] Plaintiffs spend a good portion of their sixty-four page Memorandum of Law attempting to create an issue of fact. For example, Plaintiffs infer that because two of Defendant's employees were present in Daytona Beach during spring break and were present, as shown on Defendant Prewitt's videotape, during two of the contests (Bust-A-Nut and Jack-off) held during spring break, that these employees were present at the wet t-shirt contest at issue and were aware the contest was being video taped. Plaintiffs, however, have no evidence to support this inference.

**B.     Invasion Privacy Counts.**

*1. Counts VII and VIII - statutory and common law misappropriation of likeness.*

In Counts VII and VIII, Plaintiffs have alleged violations of Florida Statute § 540.08 and common law misappropriation of likeness. Pursuant to section 540.08, it is unlawful for a person to publish, print, display or otherwise use for a commercial purpose the name or likeness of another without that person's consent. See Fla. Stat. § 540.08 (2005). According to Plaintiffs, Defendant violated section 540.08 and misappropriated their likeness when Defendant used, without Plaintiffs' consent, Plaintiffs' images to advertise two of Defendant's products, Budweiser and Bud Light (Dkt. 349 at 26). Specifically, Plaintiffs state that by wearing Budweiser and Bud Light tattoos on stage during the wet t-shirt contest, their bodies were "transformed into a symbolic billboard for 'Budweiser' and 'Bud Light' products" (Dkt. 349 at 27). The video recording and subsequent dissemination of the video was, according to Plaintiffs, an unauthorized publication and violative of Section 540.08.

To sustain their claims under Section 540.08 and common law misappropriation, Plaintiffs must establish that Defendant published, printed, displayed, or used their images or likeness to *directly promote* a product or service. Plaintiffs argue that because Plaintiffs wore the "Budweiser" and "Bud Light" tattoos while participating in the wet t-shirt contest, their images on the subsequent video tapes were used to directly promote Defendant's products. This Court disagrees. Plaintiffs have presented no evidence that Defendant published, printed or displayed Plaintiffs' images at any time. In addition, Plaintiffs have no

evidence Defendant had any knowledge the videos were even being made. Plaintiffs make an illogical leap that because the tattoos and Defendant's banners can be viewed on the video, Defendant knew the videos were being made and published.[16] Plaintiffs, however, have produced no substantive evidence to support this position.

Assuming Plaintiffs' contention that Defendant was aware of the video is true, their claims still fail as they have produced no evidence the videos were published, printed, displayed, or used for the purpose of *directly promoting* Defendant's products. "The names, likeness, and other indicia of a person's identity are used 'for the purposes of trade' . . . if they are used in advertising the user's goods or services, or are placed on merchandise marketed by the user, or are used in connection with services rendered by the user." Lane v. MRA Holdings, LLC, 242 F. Supp.2d 1205, 1221 (M.D. Fla. 2002) (citations omitted). The images of Plaintiffs, as seen on the video tapes, in no way directly promote any product of Defendant. At most, their images on the video are expressive works used solely for the purpose of entertaining the viewer. Id. at 1213.

Plaintiffs desire this Court to base Defendant's liability on the fact their banners and marketing materials are in the background of a picture another person took and published. This Court does not believe the statute was intended to be that far reaching and therefore will not extend liability to such inadvertent appearances. As Plaintiffs have failed to present any

---

[16] The Court notes that in viewing the video footage (*Girls Gone Wild* and Playboy's *Exposed: All American Girls*) submitted by Plaintiffs in support of their opposition Motion, the tattoos to which Plaintiffs are referring are difficult to see, at best.

evidence Defendant used their likeness to directly promote their products, summary judgment on Counts VI and VII is appropriate.

### 2. Count IX - False light invasion of privacy.

To establish a claim of false light invasion of privacy, a Plaintiff must establish (1) the false light was highly offensive to a reasonable person; and (2) Defendant acted either knowingly or in reckless disregard as to the falsity of the publicized material and the false light in which the material would be placed. Lane, 242 F. Supp. 2d at 1221 (citations omitted). As stated above, Plaintiffs have presented no evidence on the record that Defendant made, published, or disseminated the videos at issue. Notwithstanding Defendant's lack of involvement in the creation and subsequent dissemination of the videos, Plaintiffs' false light claim fails as Plaintiffs, during their depositions, admitted the videos accurately depict their conduct during the wet t-shirt contest (there was no "false light"). That Plaintiffs in hindsight regret their decision to participate in the contest does not negate the fact they willingly and voluntarily participated and willingly and voluntarily engaged in the conduct that is shown on the video tape. Plaintiffs have again presented no substantive evidence to sustain their claim - - their arguments are riddled with conclusory statements and conjecture with no legal or factual support.

### C. **Other State law claims**.

### 1. Count X - Negligent Infliction of Emotional Distress.

Plaintiffs allege in Count X that Defendant had a duty to inquire as to Plaintiffs' ages, obtain proof of identification, and obtain consents prior to allowing Plaintiffs to participate

in the wet t-shirt contest (Dkt. 349 at 41).  In order for a legal duty to be established "there must be some evidence or allegations that . . . defendant's conduct created or controlled the risk."  See Hernandez v. Tallahassee Medical Center, Inc., 896 So. 2d 839, 841 (Fla. 1st DCA 2005).  Plaintiffs have presented no evidence Defendant controlled the pool deck, the stage on which the contest was held, or the contest itself.  Similarly, there is no evidence in the record that Defendant sponsored the contest.  Clearly, if Defendant controlled neither the contest nor the stage on which the contest was held, it can't be said that Defendant's conduct created or controlled the risk of harm Plaintiffs are alleging.  As Plaintiffs have not established Defendant owed them any duty, summary judgment on Count X is appropriate.[17]

### 2. Count XII - Fraudulent Inducement.

In order to establish a claim of fraudulent inducement, Plaintiffs had to present evidence of "(1) a false statement concerning a material fact, (2) knowledge by the person making the statement that the representation was false, (3) intent by the person making the statement that the representation will induce another to act upon it, and (4) reliance on the representation to the injury of the other party." Tindall v. Gibbons, 156 F. Supp.2d 1292, 1298 (M.D. Fla. 2001). According to Plaintiffs' Complaint, Defendant made eight "material misrepresentations by omission"[18] in an effort to induce Plaintiffs into participating in the wet

---

[17]As this Court finds Defendant owed Plaintiffs no duty, a determination of whether the impact rule is applicable to this case need not be reached.

[18]These eight "material misrepresentations" were: "[t]hat persons under the age of 18 were not permitted on the pool deck of the Desert Inn; . . .[t]hat persons under the age of 18 could not participate in the wet t-shirt contest; . . . [t]hat persons under the age of 18 could not consume alcohol; . . . [t]hat persons under the age of 18 could not consent to their name and likeness being used by another to promote or
(continued...)

t-shirt contest (Dkt. 1 at 68). Plaintiffs have presented no evidence that Defendant or any of Defendant's employees made any statements to or had any conversations with Plaintiffs at any time. As such, their fraudulent inducement claim fails.

To the extent Plaintiffs' fraudulent inducement claim is premised on Defendant's failure to make any statement to Plaintiffs (or as Plaintiffs' state in their opposition motion, their failure to "speak up"), this claim too fails.[19] Plaintiffs have shown no duty on the part of this Defendant to "speak-up." Since Plaintiffs have presented no evidence to support Count XII of their complaint, summary judgment is appropriate.

### 3. Count XIII - Negligent Supervision.

Plaintiffs have also alleged Defendant negligently supervised its employees by failing to impose restraints on its employees with regards to "(i) promoting the various contests, (ii) providing prizes to the contestants, (iii) providing alcohol to children, (iv) providing brand

---

[18](...continued)
advertise a product; . . .[t]hat 'stringers' were included in the contests to goad the young contestants in to debaucherous conduct; . . .[t]hat their images and likeness and sexually explicit conduct were to be recorded for the purpose of creating a visual depiction; . . . [t]hat the use of a cash prize and other Anheuser-Busch trademark merchandise was employed to lure the Plaintiffs onto the stage and induce, employ, use, and persuade the Plaintiffs to engage in sexually explicit conduct for the purpose of creating a visual depiction." (Dkt. 1 at 68-69).

[19]While Plaintiffs have not specifically alleged fraudulent concealment, based on the arguments contained in their response memorandum, it appears Plaintiffs are alleging that Defendant's false statement was its failure to say anything at all. Assuming Plaintiffs' allegation that Defendant concealed those facts listed in footnote 18, Defendant's knowing concealment or non-disclosure (assuming that the alleged concealment was done intentionally), may "only support an action for fraud where there is a duty to disclose." TransPetrol, Ltd. v. Radulovic, 764 So.2d 878, 880 (Fla. 4th DCA 2000). This duty "arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." Id. As stated above, Plaintiffs have presented no evidence that Defendant owed them a duty of any kind. Accordingly, summary judgment would be appropriate for a claim of fraudulent concealment as well.

merchandise to children, (v) providing brand merchandise to be worn by children during the contests, and (vi) participating in the contests." (Dkt. 1 at 73-74). Under Florida law, "[n]egligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee indicating his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment.*"* Department of Environmental Protection v. Hardy, 907 So. 2d 655, 661 (Fla. 5th DCA 2005). As with Plaintiffs' other negligence claim, this claim also fails. Plaintiffs have presented no evidence that Defendant owed them any duty to investigate. "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader "zone of risk" that poses a general threat of harm to others." See McCain v. Florida Power Corp., 539 So.2d 500, 502 (Fla. 1992). As previously stated, Defendant did not control the pool deck, the contest or those responsible for video recording the contests.[20] Moreover, Defendant's employees were present in Daytona Beach to assist wholesalers with the execution of the wholesalers' respective marketing plans (Dkt. 321-19 at11). Plaintiffs have presented no evidence detailing how Defendant's employees, by assisting wholesalers in executing their marketing plans, placed Plaintiffs in a foreseeable zone of risk, or even how the employees' assisting wholesalers should have or did put Defendant on notice that the employees were unfit to perform their duties.

---

[20]There is no showing in the record that any of Defendant's employees were even present during the wet t-shirt contest. Michelle Ocampo, an employee of Defendant, appears in the video at other contests conducted at other locations, but not at the wet t-shirt contest at the Desert Inn. She denies being present at that contest. Plaintiffs have presented no substantive evidence to the contrary.

*4. Count XIV - Premises liability.*

In Count XIV of the Complaint, Plaintiffs' allege Defendant failed to maintain a safe condition on the pool deck and stage, thereby preventing children from (1) attending the activities of the pool deck, including the consumption of and sale of alcohol, (2) participating in the contests, (3) having their images and likeness used for commercial and advertising purposes without their consent, and (4) engaging in sexually explicit conduct (Dkt 1 at 75). However, similar to their other tort claims, Plaintiffs have produced no evidence establishing that Defendant had a duty to protect Plaintiffs from any existing dangerous conditions on the Desert Inn's premises. "The crux of the cause of action for premises liability is . . . the failure of a person *who is in actual possession or control* . . . to use due care to warn or to exclude, licensees and invitees from areas known to the possessor to be dangerous because of . . . activities." Haynes v. Lloyd, 533 So.2d 944, 946 (Fla. 5th DCA 1988)(emphasis added). There is no evidence in the record that Defendant was in *actual possession or control* of the pool or the stage at any time. Accordingly, summary judgment on Count XIV is appropriate.

*5. Count XV - Florida Deceptive and Unfair Trade Practices Act.*

The Florida Deceptive and Unfair Trade Practices Act (hereinafter "FDUPTA") protects consumers from those "who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2) (2005). Under the statute, only a "consumer" may recover for unfair trade practices. See Portionpac Chem. Corp. V. Sanitech Sys., Inc., 217 F. Supp. 1238, 1253 (M.D. Fla. 2002). Florida courts have interpreted the term "consumer" to mean

one who is a purchaser of goods or services.  See Shibata v. Lim, 133 F. Supp. 2d 1311, 1318-17 (M.D. Fla. 2000) (citing N.G.L. Travel Associates v. Celebrity Cruises, Inc., 764 So.2d 672 (Fla. 3rd DCA 2000) (finding that travel agencies are not consumers entitled to protection under the DUTPA when they are the providers, not the purchasers, of the services); Warren Technology, Inc., v. Hines Interests Ltd. Partnership, 733 So.2d 1146 (Fla. 3rd DCA 1999) ("While we agree that the plaintiff is a corporation and, therefore, could be a consumer . . . the fact that it acted as the producer in the instant transaction precludes recovery."); and Packaging Corp. Int'l. v. Travenol Laboratories, Inc., 566 F.Supp. 1480 (S.D. Fla.1983)(interpreting consumer as requiring a person or entity to be a purchaser of goods or services)).

Plaintiffs argue, without citation to authority, they were in fact consumers because Defendant "advertised, solicited, provided, offered, distributed prizes, and offered the chance of winning to the Plaintiffs." (Dkt. 1 at 62).  Notwithstanding this conclusory statement, Plaintiffs have failed to present any evidence establishing they were purchasers of any goods or services offered by Defendant.  Absent such evidence, their claim fails and summary judgment as to Count XV is appropriate.

**D.    Vicarious Liability**.

Plaintiffs appear to be advancing three theories of vicarious liability, civil conspiracy, aiding and abetting and agency.  All of these theories, however, are unavailing.

*1. Civil Conspiracy.*

In Count XVII, Plaintiffs allege that Defendant conspired with other Defendants to commit all acts alleged in the underlying Complaint. In order to state a cause of action for civil conspiracy, Plaintiffs had to present evidence of an "agreement between two or more parties to achieve an illegal objective, [an] overt act in furtherance of that illegal objective, and resulting injury." JES Properties, Inc. v. USA Equestrian, Inc., 253 F. Supp. 2d 1273, 1279 (M.D. Fla. 2003). Plaintiffs attempt to use as evidence of the alleged conspiracy, Defendant's marketing plan for Spring Break 2001.[21] However, even assuming all other Defendants were involved in the creation of said plan, Plaintiffs have produced no record

---

[21] In reviewing the record, it appears Plaintiffs erroneously assume Defendant created the marketing plan for Spring Break 2001, and instructed wholesalers on how to execute the plan. According to Julia Mize, Defendant's Special Event Traveling (S.E.T) Team, how the marketing plan was executed was decided by individual wholesalers:

> Q: Well, what promotional activities were planned at the ABI level for spring break 2001 in Daytona, Florida?
>
> A: We don't plan the execution elements and components. **That is the wholesaler's job**. What we do at Anneuser-Busch in St. Louis is we develop a theme, a creative look, promotional items, point of sale items, and we leave it up to our wholesalers, who they order the quantities of point of sale and PPG that they feel that they need to execute the plans in their market that they've developed. So we don't get involved in those details in terms of what accounts they're going to go to at what time to do what promotions. That's a wholesaler-driven function, and then we send in manpower to help put up banners or give away PPG and do promotions and things like that. But we don't develop that. That doesn't come from us. It bubbles up - - it's the wholesaler's responsibility.

(Dkt. 321-19 at 11-12).

Additionally, Mize testified, "Wholesaler was responsible for developing their own marketing plan, and I don't manage - - and I didn't manage this wholesaler or any wholesaler promotional schedules for spring break." Id. at 14. Plaintiffs have presented no competent evidence to refute this testimony. Their conclusory allegations are insufficient.

evidence that the marketing plan was implemented for the purpose of achieving an illegal objective. What Plaintiffs have presented are conclusory allegations of a conspiracy; without more, these allegations are insufficient to preclude summary judgment. See id. at 1279-80 (stating that in order to establish a conspiracy, "there must be some evidence that tends to exclude the possibility that the parties were acting independently. There must be direct or circumstantial evidence that reasonably tends to prove that the parties had a conscious commitment to a common scheme designed to achieve an unlawful objective.").

### *2. Aiding and Abetting.*

To sustain their aiding and abetting theory, Plaintiffs had to present evidence that an underlying illegal activity existed, Defendant was aware of the illegal activity and knowingly provided substantial assistance in the furtherance of the illegal activity. See Smith v. First Union Nat. Bank, 2002 WL 31056104 at 2 (S.D. Fla. 2002). While Plaintiffs have presented information regarding what they perceive as the illegal activities of other Defendants, Plaintiffs have presented no evidence that (1) Defendant was aware of the alleged illegal activity and (2) that Defendant, assuming it had knowledge of illegal activity, provided substantial assistance to the party engaging in such activity. See id. (stating, "for harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."). Summary Judgment is therefore appropriate.

*3. Agency.*

Finally, in support of their vicarious liability claims, Plaintiffs allege, under the theory of agency, that Defendant was responsible for the actions of Daytona Beverages and its employees. In order to establish the existence of an agency relationship, Plaintiffs had to present evidence of "(1) acknowledgment by the principal [Defendant] that the agent [Daytona Beverages] will act for [it], (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." Gillet v. Watchtower Bible & Tract Soc. of Pennsylvania, Inc., 913 So.2d 618, 620 (Fla. 3rd DCA 2005).[22] While the existence of an agency relationship can be established through either a written contract or other documentation, by apparent authority[23] or by ratification, see id.; Plaintiffs have failed to establish an agency relationship through any of these avenues. In fact, the only evidence in the record establishing the relationship between Daytona Beverages and Defendant is the Wholesaler Equity Agreement entered into between the parties. The Wholesaler Equity Agreement states, "Anheuser-Busch and Wholesaler are not and shall not be considered as joint venturers, partners, agents, servants, employees or fiduciaries of each other and neither shall have the power to bind or obligate the others, except as set forth in this Agreement."

---

[22] As Plaintiffs are attempting to establish the existence of an agency relationship, they bear the burden of proof. See Insurance Co. Of North America v. American Marine Holdings, 2005 WL 3158049 at 6 (M.D. Fla. 2005).

[23] An apparent agency relationship exists only if each of the three elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation. See Gillet, 913 So.2d at 620, fn 1 (citing Mobile Oil Corp. v. Bransford, 648 So.2d 119, 121 (Fla. 1995)).

(Dkt. 321-32 at 28). Plaintiffs have presented no evidence that the terms of this Agreement were amended in any way. As such, Plaintiffs have failed to establish their civil conspiracy count. Plaintiffs have failed to establish Defendant was vicariously liable, under any theory, for the actions of Daytona Beverages or any other Defendant. Accordingly, summary judgment on Count XVII is appropriate.

## CONCLUSION

Plaintiffs have failed to present a genuine issue of fact sufficient to preclude summary judgment on any of their claims. As such, it is hereby ORDERED AND ADJUDGED that:

1. Defendant Anheuser-Busch, Inc.'s Motion for Summary Judgment on All Claims (Dkt. 320) is **GRANTED**.

2. All pending Motions as to Defendant Anheuser-Busch, Inc. are denied as moot.

3. The Clerk is directed to terminate Defendant Anheuser-Busch, Inc. as a party to this action.

4. Jurisdiction is reserved on the issues of attorneys' fees, costs and Rule 11 Sanctions.

**DONE** and **ORDERED** in Tampa, Florida on March 28, 2006.

*/s/ James S. Moody, Jr.*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2004\04-cv-591 Motion for Summary Judgment -ABI.frm